IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOCHEATH UON | : | CIVIL ACTION |
| v. | : | |
| TANABE INTERNATIONAL CO., | : | |
| LTD., et al. | : | NO. 10-5185 |

-----

| | | |
|---|---|---|
| SOCHEATH UON | : | CIVIL ACTION |
| v. | : | |
| JAPAN PAPER CONVERTING MACHINE | : | |
| GROUP CO., LTD., et al. | : | NO. 11-5406 |

MEMORANDUM

Bartle, J.                                         January 20, 2012

        According to the complaints filed in these two

consolidated civil actions, Peter Uon died in Pennsylvania in

2009 while servicing an allegedly defectively-designed machine

manufactured in Japan.  Plaintiff, the administrator of Peter

Uon's estate, filed these two actions for damages against the

entities involved in producing and selling that machine.  In the

first-filed suit, Civil Action No. 10-5185, plaintiff named as a

defendant Tanabe International Co., Ltd. ("the new Tanabe

International"), a Japanese corporation.[1]  In the second suit,

Civil Action No. 11-5406, plaintiff named as defendants Tanabe

_____

1.  Plaintiff also named five other companies as defendants in
Civil Action No. 10-5185.  This court dismissed one of those
defendants and plaintiff voluntarily dismissed another.  Thus,
only four of the original six defendants remain in the first-
filed lawsuit.  The allegations made against the other defendants
are not relevant for present purposes.

Machinery Co., Ltd., Japan Paper Converting Machine Group Co., Ltd., Sugano Manufacturing, and JBF Partners Co., Ltd., which are all Japanese business entities.  On December 7, 2011, the court granted plaintiff's unopposed motion to consolidate the two actions for the purposes of discovery and trial.

Before the court is the motion of Tanabe International Co., Ltd., to dismiss as to it the complaint in Civil Action No. 10-5185 for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Plaintiff and each of the nonmoving defendants in Civil Action No. 10-5185 oppose the motion.

I.

The jurisdictional arguments considered below require the court to trace the relationship of the moving defendant in Civil Action No. 10-5185 to the four Japanese businesses named as defendants in Civil Action No. 11-5406.  After a period of jurisdictional discovery, the following facts are undisputed.

Tanabe Machinery Co., Ltd. ("Tanabe Machinery") is a Japanese entity that manufactured machines that fold and glue paper and paper products.  Sometime prior to or during 1994, Tanabe Machinery manufactured in Japan the machine that allegedly caused Peter Uon's death in Pennsylvania fifteen years later. Tanabe Machinery sold that machine through distributors to Uon's Pennsylvania-based employer in 1994.

In January 2007, Tanabe Machinery entered proceedings under Japan's Civil Rehabilitation Act.[2]  In its Civil Rehabilitation Act petition, Tanabe Machinery explained that one of the causes of its floundering business was lower than expected sales of its machines in the United States.

During the Civil Rehabilitation Act proceeding, a private equity fund[3] called JBF Partners Co., Ltd. ("JBF Partners") and Tanabe Machinery negotiated a Business Transfer Agreement.  Under the terms of this agreement, JBF Partners agreed that it would create and fund a new corporation that would purchase "all of the business concerning the manufacture, repair, processing, and sale of machinery for manufacturing paperware and folded boxes, machinery for paper works, machinery for printing and binding, machine tools, and machinery for construction materials."  JBF Partners also agreed that the new corporation would assume certain of Tanabe Machinery's liabilities.  Tanabe Machinery's creditors approved the terms of the Business Transfer Agreement, and a Japanese court authorized Tanabe Machinery and

---

2.  This proceeding appears to be similar to a proceeding under Chapter 11 of the Bankruptcy Code in the United States.

3.  An "application for permission to transfer business" filed by Tanabe Machinery in the rehabilitation proceeding refers to JBF Partners as "a corporate turnaround fund."

JBF Partners to execute the deal.[4]  The two companies signed the Business Transfer Agreement on March 7, 2007.

In accordance with the Business Transfer Agreement, JBF Partners incorporated Tanabe International Co., Ltd. ("the old Tanabe International"), which received the purchased assets and assumed liabilities of Tanabe Machinery.  The old Tanabe International began manufacturing and selling the same types of machines that Tanabe Machinery had produced prior to the Civil Rehabilitation Act proceeding.  The corporate entity of Tanabe Machinery continued to exist after the Civil Rehabilitation Act proceeding concluded, but the record is silent as to what business activities, if any, the company performed after the conclusion of that proceeding.

On March 31, 2010, the old Tanabe International incorporated a new wholly-owned subsidiary that it also named Tanabe International Co., Ltd. ("the new Tanabe International"). The next day, on April 1, 2010, the old Tanabe International changed its name to Japan Paper Converting Machine Group Co., Ltd. ("JPCMG").[5]  Thus, at the time of Peter Uon's death in 2009,

---

4.  Although the record does not contain an order from the Japanese court approving the Business Transfer Agreement, we infer that the court authorized JBF Partners and Tanabe Machinery to execute the contract.  An "application for permission to transfer business" filed with the rehabilitation court by Tanabe Machinery in February 2007 states that a condition precedent to execution of the Business Transfer Agreement was the rehabilitation court's approval.

5.  In 2009, the old Tanabe International acquired another subsidiary, Sugano Manufacturing, that manufactured and sold
(continued...)

the moving defendant, that is, the new Tanabe International, had
not yet been incorporated.

The new Tanabe International, the moving defendant,
sells within Japan machinery that folds and glues paper.[6]  The
new Tanabe International has not shipped any products to
Pennsylvania or sold any machines in the United States.  The
company does not have offices, employees, or bank accounts in the
Commonwealth.  It is not licensed to do business here, does not
have a registered Pennsylvania agent, and has not by contract
accepted the liabilities of Tanabe Machinery or of the old Tanabe
International, now known as JPCMG.

There is an internet website for "Tanabe International
Co., Ltd." that is partially available in English and is
accessible to Pennsylvania residents.  The content on the website
has a 2009 copyright date.[7]  The website was not updated after
the old Tanabe International took its present name of JPCMG and

---

5.(...continued)
smaller versions of similar machines until 2010.  In that year,
as part of the same restructuring during which the new Tanabe
International was incorporated and the old Tanabe International
renamed itself JPCMG, the old Tanabe International assumed
responsibility for the machine manufacturing formerly performed
by Sugano Manufacturing.  Sugano Manufacturing continues to sell
the old Tanabe International's machines within Japan.

6.  It is unclear from the record whether the new Tanabe
International sells only machines produced by JPCMG or whether it
also sells machines produced by other companies.

7.  A section of the website called "News & Topics" states that
on October 1, 2009, "Tanabe launched newly designed website."
See Tanabe, http://www.tanabe-hp.jp/en/index.html (last visited
Jan. 20, 2012).

formed its subsidiary, the new Tanabe International, in 2010.
See Tanabe International Co., Ltd., http://www.tanabe-hp.jp/en/
index.html (last visited Jan. 20, 2012).  Thus, the website
appears to refer to the old Tanabe International.  The website
does not allow customers to purchase products via the internet,
and there is no evidence that the new Tanabe International has
any control over the website.  The content presented in English
recites the corporate history of "Tanabe International Co., Ltd."
and provides contact information and a brief overview of the
company's products.

## II.

A federal district court sitting in a diversity action
may assert personal jurisdiction over a nonresident of the state
in which the court sits only to the extent authorized by the law
of that state.  Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania's long-
arm statute provides for jurisdiction over nonresidents
coextensive with that allowed by the Due Process Clause of the
Constitution.  42 Pa. Cons. Stat. Ann. § 5322(b).

Under the due process clause, we may exercise personal
jurisdiction only over defendants who have "certain minimum
contacts ... such that the maintenance of the suit does not
offend traditional notions of fair play and substantial justice."
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal
quotation omitted).  A parallel inquiry is whether the
defendant's contacts with the forum state are such that the
defendant "should reasonably anticipate being haled into court

there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

Two bases exist upon which a federal district court may exercise personal jurisdiction over a nonresident defendant. "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-15 nn.8-9 (1984)); <u>see</u> <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 368 n.1 (3d Cir. 2002).  Specific jurisdiction arises when the plaintiff's claim stems from or relates to conduct purposely directed at the forum state.  <u>Marten</u>, 499 F.3d at 296 (citing <u>Hall</u>, 466 U.S. at 414-15 nn.8-9).

To determine whether specific jurisdiction exists, we engage in a three-part inquiry.  <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102-03 (3d Cir. 2009).

> First, the defendant must have purposefully directed [his] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

<u>Id.</u> (internal quotations, alternations, and citations omitted). The party invoking federal jurisdiction, in this case the plaintiff, bears the burden of proving that the court has personal jurisdiction over each defendant.  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004); <u>Carteret Sav.</u>

Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992); see also

Hertz Corp. v. Friend, 130 S. Ct. 1181, 1194 (2010).

It is clear from the undisputed facts in the record

that the new Tanabe International does not maintain any contacts

with Pennsylvania that would support this court's exercise of

general personal jurisdiction.  The new Tanabe International also

was in no way involved in the production or sale of the machine

that allegedly caused Peter Uon's death.  Thus, we may not

exercise specific jurisdiction over the claims against it.

Plaintiff and the nonmoving defendants in Civil Action

No. 10-5185 maintain that the new Tanabe International has

contact with the forum through a limited and outdated website

maintained in the name of "Tanabe International Co., Ltd."  This

assertion is without merit.  This website contains little more

than a corporate history, contact information, and limited

information about the company's products.[8]  As discussed above,

the material on the website was copyrighted in 2009.  In that

year, the name "Tanabe International Co., Ltd." as used on the

website referred to the old Tanabe International, now known as

---

8.   See Tanabe Our Global Mission,
http://www.tanabe-hp.jp/en/_mission/index.html (last visited
Jan. 20, 2012); Tanabe Corporate/Group Information,
http://www.tanabe-hp.jp/en/_corporate/index.html (last visited
Jan. 20, 2012); Tanabe Product ISM & Lineup,
http://www.tanabe-hp.jp/en/_product/index.html (last visited
Jan. 20, 2012); Tanabe Our History,
http://www.tanabe-hp.jp/en/_history/index.html (last visited
Jan. 20, 2012); Tanabe Group Strategy,
http://www.tanabe-hp.jp/en/_strategy/index.html (last visited
Jan. 20, 2012).

JPCMG.  The old Tanabe International adopted its current name of
JPCMG in 2010, and the moving defendant, the new Tanabe
International, did not exist when the information on the website
was created.

Moreover, there is no evidence in the record that
either the old Tanabe International or the new Tanabe
International advertises the website at issue to Pennsylvania
residents, uses the website to solicit business in Pennsylvania,
or receives product orders from Pennsylvania residents through
the website.  The mere existence of a website containing the old
Tanabe International's name, history, contact information, and
product information is insufficient under the Due Process clause
of the Constitution to support an exercise of personal
jurisdiction over the new Tanabe International.  See Toys "R" Us,
Inc. v. Step Two, S.A., 318 F.3d 446, 451-55 (3d Cir. 2003);
Zippo Mfg. Co. v. Zippo DOT Com, Inc., 952 F. Supp. 1119, 1124-25
(W.D. Pa. 1997).

                              III.

Plaintiff and the nonmoving defendants in Civil Action
No. 10-5185 seek to overcome the new Tanabe International's lack
of contacts with the forum by imputing to it the contacts of
Tanabe Machinery, the company that manufactured the machine that
purportedly killed Peter Uon.

Typically, a court may exercise specific personal
jurisdiction over a defendant when the harm allegedly occurs in
the jurisdiction from a defective product defendant manufactured

elsewhere and shipped into the jurisdiction.   42 Pa. Cons. Stat.

Ann. § 5322(a)(4); Heller v. Centrax Prods. Corp., 543 F. Supp.

318, 319-21 (E.D. Pa. 1982).   No party has disputed that Tanabe

Machinery manufactured and sold to a Pennsylvania buyer the

machine that allegedly caused Peter Uon's death.   Accordingly,

this court may exercise specific personal jurisdiction over

Tanabe Machinery with regard to the plaintiff's claims in Civil

Action No. 10-5185.

        Plaintiff and nonmoving defendants then argue that the

new Tanabe International is Tanabe Machinery's successor in

interest under Pennsylvania law,[9] and as such, it stands in the

shoes of Tanabe Machinery with regard to the claims at issue in

this lawsuit.   Generally, under Pennsylvania law, a company's

purchase of another company's assets does not impose upon the

purchaser liability for defects in the seller's products.

Dawejko v. Jorgensen Steel Co., 434 A.2d 106, 107 (Pa. Super.

---

9.   The moving defendant, the new Tanabe International, argues
that the Japanese law of successor liability governs here.   The
new Tanabe International submitted the opinions of experts in the
law of Japan with its motion to dismiss.   These experts opine
that the old Tanabe International, now known as JPCMG, is not
liable for Tanabe Machinery's defectively-designed products under
the terms of the Business Transfer Agreement and that Japanese
law would honor the scope of the liability transferred to a
successor through such an agreement.   The new Tanabe
International argues its liability cannot be any greater than
that of its corporate parent, the old Tanabe International.
Neither the plaintiff nor the nonmoving defendants have contested
the opinions of these experts.   We eschew any formal choice of
law analysis on the issue of successor liability because even if
the Pennsylvania law on that subject applies, as we discuss
below, the new Tanabe International must be dismissed.

1981).   While there are six exceptions to this general rule,

plaintiff and nonmoving defendants argue that only the so-called

"product line" exception applies.   See <u>Lacy v. Carrier Corp.</u>, 939

F. Supp. 375, 378 n.2 (E.D. Pa. 1996); <u>see also</u> <u>Indem. Ins. Co.</u>

<u>of N. Am. v. Gross-Given Mfg. Co.</u>, No. 08-03, 2009 WL 2959825, at

*2 (E.D. Pa. Sept. 16, 2009).   Under this exception, Pennsylvania

law will impose liability in the following circumstances:

> [W]here one corporation acquires all or
> substantially all the manufacturing assets of
> another corporation, even if exclusively for
> cash, and undertakes essentially the same
> manufacturing operation as the selling
> corporation, the purchasing corporation is
> strictly liable for injuries caused by
> defects in units of the same product line,
> even if previously manufactured and
> distributed by the selling corporation or its
> predecessor.

<u>Dawejko</u> 434 A.2d at 110-11.   In determining whether to apply the

product line exception, we may consider the following three

factors, commonly referred to as the <u>Ray</u> factors:

> 1) The virtual destruction of the
> plaintiff's remedies against the original
> manufacturer caused by the successor's
> acquisition of the business;
> 2) The successor's ability to assume the
> original manufacturer's risk-spreading rule;
> and
> 3) The fairness of requiring the successor
> to assume a responsibility for defective
> products that was a burden necessarily
> attached to the original manufacturer's good
> will being employed by the successor in the
> continued operation of the business.

<u>Schmidt v. Boardman Co.</u>, 11 A.3d 924, 945-46 (Pa. 2011); <u>Dawejko</u>,

434 A.2d at 109, 111; <u>see generally</u> <u>Ray v. Alad Corp.</u>, 560 P.2d

3, 9 (Cal. 1977).   We also consider whether the successor

advertised itself as a continuation of its predecessor, whether
the successor sold the same products and maintained the same
name, personnel, property and customers, whether the successor
acquired the predecessor's goodwill, and whether the sale
required the predecessor to dissolve.  <u>Dawejko</u>, 434 A.2d at 111.
All of the requirements need not be met and there is no formula
for determining the weight to be given the various factors.
<u>Indem. Ins. Co.</u>, 2009 WL 2959825, at *4.

        The undisputed facts in the record before us establish
that the product line exception does not apply to the moving
defendant, the new Tanabe International.  Most importantly, there
is no evidence that the new Tanabe International manufactures
anything.  Rather, it sells the machines manufactured by the old
Tanabe International, now called JPCMG.  Consequently, the new
Tanabe International has not "undertake[n] essentially the same
manufacturing operation as the selling corporation," Tanabe
Machinery.  <u>Dawejko</u> 434 A.2d at 110-111.

        Moreover, it was JBF Partners, not the new Tanabe
International, that executed a Business Transfer Agreement with
Tanabe Machinery during the Civil Rehabilitation Act proceeding.
It was the old Tanabe International, not the new Tanabe
International, that purchased all of Tanabe Machinery's assets
and business related to paper products.  The new Tanabe
International did not purchase any equipment or obtain any
customers directly from Tanabe Machinery.  Similarly, there is no

evidence that any former Tanabe Machinery officer or director works for the new Tanabe International.[10]

Plaintiff and the nonmoving defendants place great weight on statements made on the "Corporate History" section of the "Tanabe International Co., Ltd." website suggesting that Tanabe Machinery and the new Tanabe International are one and the same.  See Tanabe Our History, http://www.tanabe-hp.jp/en/_history/index.html (last visited Jan. 20, 2012).  Another page of the "Tanabe International Co., Ltd." website boasts that over 50 of its machines are present in the United States.  See Tanabe Our Global Mission, http://www.tanabe-hp.jp/en/_mission/index.html (last visited Jan. 20, 2012).  This is irrelevant to the issue before the court because, as noted above, the content on the website dates from 2009 when the name "Tanabe International Co., Ltd." referred to the old Tanabe International, that is, JPCMG.  These statements could not refer to the new Tanabe International because it did not yet exist. Thus, the website also does not support application of the product line exception to the new Tanabe International.  No party has come forward with advertising material attributable to the moving defendant, the new Tanabe International.  The circumstances under which Pennsylvania law will impose liability

---

10.  The record reveals that two former Tanabe Machinery directors became directors of JPCMG, the old Tanabe International, several years after the Business Transfer Agreement was executed.

-13-

on a successor in interest through the product line exception simply are not present here.

Accordingly, we need not consider whether Pennsylvania law's imposition of liability on a successor corporation through the product line exception is a constitutionally-sufficient basis for an exercise of personal jurisdiction over a successor with no other contacts to the forum state.

The new Tanabe International does not have the minimum contacts with Pennsylvania necessary for this court to exercise personal jurisdiction over it.  Int'l Shoe Co., 326 U.S. at 316. Nor should it reasonably contemplate being haled into court here. World-Wide Volkswagen, 444 U.S. at 297.  We will grant the motion of the new Tanabe International to dismiss it from Civil Action No. 10-5185.